THE ATTORNEY-GENERAL,

*vs.*

LEVI BLOSSOM, *et al.*

| 1 | 317 |
| 81 | 472 |
| 81 | 491 |
| Wisconsin | |
| 1 | 317 |
| 83 | 120 |
| 1 | 317 |
| f103 | 610 |
| 103 | 612 |
| 1 | 317 |
| 112 | 299 |

The Supreme Court has original jurisdiction of the writs of Habeas Corpus,
Mandamns, Quo Warranto, Injunction, Certiorari, and other original and
remedial writs.

This was a motion to dismiss the cause for want of
jurisdiction.

At a former term, the attorney-general filed an in-
formation in the nature of a quo warranto against
Levi Blossom and others, charging that they were ex-
ercising the powers and privileges. of banking, and
issuing, for the purpose of circulation as money, bank
bills, &c. The defendants were summoned to answer,
and appeared ; the cause was continued until this
present term, when the defendants filed their motion

JUNE TERM,
1853.

Attorney
General
vs.
Blossom.
to dismiss, on the ground that this was an original proceeding, and that this court had appellate jurisdiction only.

*Jas. H. Knowlton*, for the motion. *Art.* 7, *Sec.* 3, *of the Constitution of Wis., R. S. p.* 636. He contended, that even if this court had original jurisdiction of the writ of quo warranto, that writ was abolished by the statute, and the information and summons provided by the statute, were of a different character, a new remedy, the original jurisdiction of which the legislature could not confer upon this court.

*J. R. Doolittle*, contra, cited 6 *Cranch*, 128 ; *Fletcher vs. Peck.* 1 *Cow.* 564 ; 3 *Denio*, 394 ; *Journal of Debates in Convention*, 1847 *and* 1848, *p.* 66 ; 2 *Chand.* 250.

*By the Court*, SMITH, J.   The motion to dismiss this cause, is one going entirely to the jurisdiction of this court, and is based exclusively upon the 3d section of the 7th Article of the Constitution of this State.   That article is in the following words :

" The Supreme Court, except in cases otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State ; but in no case removed to the Supreme Court shall a trial by jury be allowed.   The Supreme Court shall have a general superintending control over all inferior courts ; it shall have power to issue writs of *habeas corpus, mandamus, injunction, quo warranto, certiorari*, and other original and remedial writs, and to hear and determine the same."

Upon the proper construction of this section de-

pends the determination of the motion. On the one hand, it is contended that the section in question restricts the Supreme Court (with one or two exceptions, alleged to be found in other portions of the Constitution,) to appellate jurisdiction, and a superintending control over inferior "courts," and that the writs named in the last clause of the third section, are to be regarded merely as instrumentalities, provided for the complete exercise of such appellate jurisdiction and superintending control.

On the other hand, it is insisted, that the power to issue, and to hear and determine the several writs named in the third section, is a distinct grant of original jurisdiction of the same, and the subject matters, as well as the persons, to which they may apply.

It may be well, in the commencement of this investigation, to examine into the nature of the writs mentioned, and the character of the power having control of them.

The writ of habeas corpus, in England, where it had its origin, is considered as a high prerogative writ; issuing out of the King's Bench, and running into every part of the King's dominions. It is a direct exercise of the sovereignty through the judicial arm, in behalf of the liberty of the subject.

A *mandamus*, was also a high prerogative writ, issuing out of the King's Bench, and directed to any person, corporation, or inferior court of jurisdiction within the King's dominions, requiring them to do some particular thing appertaining to their office and duty. 5 *Bacon's Abr.* 256; 3 *Blk. Com.* 110. Its object was to prevent disorder from failure of justice and defect of police. 3 *Bl. Com.*

The writ of *quo warranto*, was a writ, in the na-

June Term,
1853.

Attorney
General
vs.
Blossom.

ture of a writ of right for the King, against any one who had usurped any office or franchise, requiring him to show by what authority or warrant, &c., &c.

The writs of injunction and certiorari, the one more particularly applicable to chancery, and the other to law tribunals, are remedial writs of a high judicial character, and essential to the complete exercise of the function of sovereignty in the administration of justice.

This class of writs, it would seem, appertain to, and are peculiarly, the instruments of the sovereign power, acting through its appropriate department ; prerogatives of sovereignty, represented in England by the king, and in this country by the people in their corporate character, or, in other words, *the State;* and from their very nature, from their peculiar character, functions and objects, to appertain to, and appropriately belong to the supreme judicial tribunal of the State. Being prerogative writs, they do not pertain to courts of inferior jurisdiction. Whatever jurisdiction such courts may have of them, is a delegated one, and by no means inherent in them as representatives of the sovereignty, acting in its judicial capacity. I have been unable to find a single instance in which inferior courts have exercised jurisdiction over any of the class denominated prerogative writs, unless such jurisdiction has been specially conferred. But they have, in every instance, unless otherwise provided by special enactment, been issued out of the King's Bench, or the High Court of Chancery, accordingly as they appropriately pertain to the functions of the one or the other.

These writs differ essentially, in their character and objects, from ordinary writs issued by the courts in

the regular and usual administration of the law be-
tween parties. They go to accomplish peculiar and
specific objects, carrying with them the special man-
date of the sovereign power, addressed to the person,
corporation or officer, requiring them to do or not to
do, to proceed, or to desist, to perform the duty re-
quired by law, or to abstain from the exercise of pow-
ers without lawful authority, &c. They bear no resem-
blance to the usual processes of courts, by which
controversies between private parties are settled by
the judicial tribunals of every grade.

Hence, it would seem to be apparent, that the ap-
propriate court in which the jurisdiction of this class
of writs should be lodged, is the Supreme Court of
the State, and something more than mere implication
is required to divest that court of such jurisdiction or
transfer it to another.

I am aware that the Supreme Court of this State
is the creature of the Constitution. But so is every
other court, as well as every other office or department
that exists under it. But while the Constitution has
created the courts, it has not undertaken to specify in
detail all of the functions of these courts, nor the
manner of their exercise. The framers of that in-
strument, in the institution of the several departments
of the government, and their various subdivisions,
made use of language having precise and technical sig-
nification, in the science of the law and of government.
Hence, when they declared that the judicial power
of this State should be vested in the several courts
therein mentioned, they did not undertake to define
what judicial power was. When they spoke of courts,
they did not undertake to define what they meant by
the term. The terms Supreme Court, Circuit Courts,

JUNE TERM,
1853.

Attorney
General
vs.
Blossom.

Probate Courts, &c., carry with them a certain force, and from long usage, express certain definite and fixed ideas, as much so, as the Court of King's Bench, Court of Common Pleas, High Court of Chancery, &c. ; and hence the language used in the Constitution, to define their jurisdiction, is brief and comprehensive, carefully avoiding detail and minute specification. The Supreme Court is made by the Constitution the highest judicial tribunal. It is the court of dernier resort. As such tribunal, it is invested with the jurisdiction prescribed, but in no way are the means or machinery, or instrumentalities, by which such jurisdiction shall be exercised, specified and prescribed. It shall have appellate jurisdiction, but how that is to be exercised, the manner, time, and subject matter of appeals, and the immediate tribunals from which appeals are to be taken, or the process, or instrumentality by which they are to be brought to its forum, are not mentioned.

It is obvious, then, that when the framers of the Constitution speak of a Supreme Court, they intended to convey the idea of the highest tribunal in the judicial department of the government. When they speak of Circuit Courts, they convey the idea of a judicial tribunal, limited as to space, and performing judicial functions within a prescribed district ; and of Probate Courts, *ex vi termini*, they define its functions according to the peculiar sphere of courts of that character ; and in no instance do they attempt to prescribe the manner in which their powers shall be exercised, or to define what they mean by a " court."

Let us now direct our attention to this 3d section of the judiciary article, and endeavor to ascertain its meaning. It is to be remarked, that this section is

exceedingly brief, and is divided into three clauses.

It is not altered in any respect, from the article as reported by the judiciary committee, except, as to a material punctuation. I will transcribe it here, as it was reported by the Chairman of the Judiciary Committee of the Convention.

"The Supreme Court, except in cases otherwise "provided in this Constitution, shall have appellate "jurisdiction only, which shall be co-extensive with "the State ; but in no case removed to the Supreme "Court shall a trial by jury be allowed in said court. "The Supreme Court shall have a general superin-"tending control over all inferior courts. It shall "have power to issue writs of *habeas corpus, manda-*"*mus, injunction, quo warranto, certiorari,* and other "original and remedial writs, and to hear and deter-"mine the same."

After the words "inferior courts," there is a period. The sentence is as complete and independent as is the first sentence which speaks of the appellate jurisdiction of the Supreme Court. A new sentence is commenced, distinct and independent.

We shall endeavor to analyze these several clauses, and if possible arrive at their true meaning.

The first clause is in these words : "The Supreme "Court, except in cases otherwise provided in this "Constitution, shall have appellate jurisdiction only, "which shall be co-extensive with the State, but in "no case removed to the Supreme Court shall a trial "by jury be allowed."

This can hardly be said to be a grant of power. Its import is, to restrict rather than to confer power. It would seem, that, in the mind of the framer of the sentence, was present the idea of a tribunal whose

JUNE TERM, 1853.

Attorney General vs. Blossom.

powers without such restrictive phrase, would be more ample than the policy of the State or the convenience of the government would require or sanction, and words of limitation were essential and necessary. In other words, without such restrictive phrase, the jurisdiction (inherent, for there is no other grant before,) would be more than appellate; that the expression "Supreme Court," *ex vi termini* carried with it an idea of jurisdiction, more ample, and general than the policy of the government about to be formed, should permit to remain in that court, and hence in the very first phrase of the section, the author of the provision commences with words of limitation.

The phrase, prescribing the local boundaries of such appellate jurisdiction, can in no sense be deemed words of grant. They are rather words descriptive of the *locale*, not definitive of the jurisdiction itself. But, it is equally apparent, that, in the mind of the framers of this section, it would not do to restrict the jurisdiction of the Supreme Court exclusively to one of an appellate character. Contingencies might arise, wherein the prerogatives and franchises of the State in its sovereign character, might require the interposition of the highest judicial tribunal to preserve them. Other departments might need its intervention to protect them from usurpation; indeed, various emergencies may have been conceived, in which this branch of the government, and this arm of the judiciary alone, might be adequate, to preserve the balance of powers, to arrest usurped powers, franchises and prerogatives, to quell resistance to constitutional authority, to preserve the liberty of the individual citizen, and shield the sovereignty of the State itself from violation. Hence we see, that in the very sentence

which constitutes the restriction to appellate jurisdiction, is inserted the exception, which is as broad as the constitution itself. It is not attempted to name specifically the exceptions in the judiciary article alone, but left them to be formed within the whole purview of the constitution.

The 2d clause of the 3d section, is in the following words :

" The Supreme Court shall have a general superintending control over all inferior courts."

This sentence, contains a clear grant of power. We will not undertake to say, that without this grant the power would not be in the court. It is not necessary to discuss that question. We are endeavoring to arrive at the proper construction of the written law. It is a grant of power. It is unlimited in extent. It is undefined in character. It is unsupplied with means and instrumentalities. The Constitution leaves us wholly in the dark as to the means of exercising this clear, unequivocal grant of power. It gives, indeed, the jurisdiction, but does not pretend to intimate its instruments or agencies. How then is it to be exercised? By means of the writs of *habeas corpus, mandamus, quo warranto, injunction* and *certiorari ?* Are these the writs adapted to the exercise of " a general superintending control over *inferior courts ?*" It is barely possible, that some one of them might be adapted to such a function in some specific case ; but weighty, powerful and imposing as such an armour is, it is no more adapted to the exercise of a " general superintending control over inferior courts," than would have been the spear of Goliath to the siege of Acre. What, then, are the means, instrumentalities and agencies by which this power is to be exercised ?

Clearly the ordinary means provided by the common law, or such as should be supplied by legislative enactment. The very force of the terms, Supreme Court ; comprehending, naming, instituting the highest, the *dernier* judicial tribunal known to, and recognized by the common law, necessarily carries with it all the writs, instrumentalities, powers, and agencies provided by the common law for the convenient and complete exercise of such superintending control. It is idle to say, that the enumeration of such writs as are mentioned, were made to supply such means of superintending control.

The third clause of the third section is in the following words :

" It shall have power to issue writs of *habeas corpus, mandamus, injunction, quo warranto, certiorari,* and other remedial writs, and to hear and determine the same."

Here is also a distinct grant of power. The first of the section is restrictive, one of limitation merely. The two last are clear grants of power. The one of which gives the power of a superintending control over inferior courts, the other giving the power to issue certain writs in appropriate cases, and to hear and determine the same. The only question to be considered is, whether or not, the power to issue the writs named, is merely auxiliary to the power to exercise a superintending control over inferior courts, or, whether it is a distinct power. This question is to be determined :

*First,* from the language employed, and *second,* from the nature of the writs themselves.

1st. From the language employed. In the whole section, it is apparent that each clause of the section,

is to be construed by itself. The first is one of limita-
tion, the second is one of grant. The third also is one
of grant, but of a grant of jurisdiction not in any way
necessarily connected with the subject and matter of
the former grant ; but of jurisdiction over a peculiar
class of writs, in their nature, functions and objects not
appropriate to appellate, but original jurisdiction ;
not going necessarily or usually to inferior *courts*, but
to officers, corporations and persons ; not adapted by
their character to superintend or control inferior
courts, but to protect and guard the franchises of the
people, to shield their offices from invasion or usurpa-
tion, the State sovereignty from violation, and its pre-
rogatives from invasion. 2dly. From the nature
of the writs themselves. Let us keep in mind, that
the second clause of the section under consideration,
is a simple grant of power to the Supreme Court to
exercise a superintending control over inferior courts ;
and that it is contended that the last or 3d clause is
merely ancillary to the second. From the nature of
the writs mentioned in the last or 3d clause is it pro-
bable that the framers of the Constitution intended it
as ancillary ? The power granted in the second clause
is, " to exercise a general superintending control over
inferior courts." Is the writ of habeas corpus in its
nature adapted to such a function ? The object and
purpose of the writ is to bring the citizen or subject
out of illegal restraint. Its object is, to bring the
person before the court. Is it a supposable case that
the inferior *court* is restrained of its liberty and that
this writ may go to its relief ? Reference is not made
here, nor is it proper to make it, to the writ of *habeas
corpus cum causa*. That is quite a different writ from
the one mentioned. How is a *quo warranto* to go to

June Term, 1853,

Attorney General vs. Blossom.

an *inferior court ?* How is it adapted to the exercise of a superintending control over a *court ?* This writ may go to a person who has usurped the office of Circuit or County Judge, or that of justice of the peace, or indeed any other office, requiring him to appear and show by what authority he exercises the power of the office. But this direction is to the person, not to the officer ; to the individual, not to the court. In no sense can it be said, that it is, or can ever be used to superintend or control the court. The use of the writ of *quo warranto* for the purpose of superintending or controlling an inferior court would be, indeed a novelty. It is utterly repugnant to all our ideas of the Constitution, the functions, the character of a court. It may go to an individual who usurps the office of judge, but not to the court itself. Its office is to attack that which is illegal, not to superintend and control that which is lawful,

A mandamus cannot go to an inferior court to *control* its action. But it may be issued to put the court in motion. It may be called the moving, not the controlling agency.

A writ of injunction is in no way an appropriate means for exercising a superintending control over an inferior court. This writ is indeed of a high judicial character. It is usually directed to the parties, and not to the court. The parties, and not the court, are amenable to its penalties. It is not, therefore, to be considered as ancillary to a power of superintending control over inferior courts.

The writ of certiorari is the only one in the category given in this clause of the 3d section, which is in the least degree compatible with, nay, which is not totally repugnant to the position assumed by the advocates of

JUNE TERM,
1853.

Attorney
General
vs.
Blossom.

the motion. But because it is not repugnant to that position, it must not be considered as supporting it. This is a writ which goes as well to other tribunals as to courts ; and it would seem that as its most usual function is to bring before the court of review the proceedings of judges, and judicial officers when not acting as courts, and also the proceedings of other tribunals not of a judicial character ; and as the Supreme Court, in the clause under discussion, is given the power to issue, hear and determine the same, that the idea of its being ancillary to a superintending control over inferior courts, if not expressly, is by the strongest implication, excluded.

Under whatever aspect this court can view this clause of the third section, we are unable to harmonize the nature and office of the class of writs therein named, with an intention on the part of the authors of them, to render them merely ancillary to the exercise of a power of superintending control over inferior courts, lawfully established, or to provide them as mere instrumentalities of appellate jurisdiction. It is not the aim of the Constitution to provide the machinery by which the powers granted by it are to be exercised. That belongs appropriately to the legislative department. It would become an endless process, if attempted in the framing of a fundamental law.

The full, ample, and affirmative words by which the jurisdiction of these writs is granted to the Supreme Court, prohibits the restriction contended for, by mere implication. Being original in their character, and jurisdiction of them being given fully and amply, negative or restrictive words are necessary to limit their use to the objects and purposes of appellate ju-

risdiction, and especially is this so, because the writs are not, with perhaps one exception, adapted by their nature and character to the purposes of appellate jurisdiction. Their function is necessarily original. They imply original jurisdiction, by the very force of the terms used in their nomenclature.

And, why was original jurisdiction given to the Supreme Court, of these high prerogative writs? Because these are the very armor of sovereignty. Because they are designed for the very purpose of protecting the sovereignty and its ordained officers from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties, and to guard its prerogatives and franchises against usurpation. The convention might well apprehend that it would never do to dissipate and scatter these elements of the State sovereignty among five, ten, twenty, or forty inferior tribunals, and wait their tardy progress through them to the supreme tribunal, upon whose decision must finally depend their efficacy!

To preserve the liberties of the people, and to secure the rights of its citizens, the State must have the means of protecting itself. It must preserve, pure and unimpaired, every channel and agency, through which its power is exercised or administered, to rebuke in the most speedy manner consistent with individual right, any and all who assume its name, or usurp its authority, or seize upon its franchises. To this end was the writ of *quo warranto* designed, and to this end was it entrusted to the highest judicial court of the State. To deny the State the instrumentality of this writ, through the functions of this court, would be such an emasculation of its sovereignty, as should never be accomplished by implication, but

would require plain, palpable and unequivocal lan-
guage to warrant even an inference of such design.

This construction of the Constitution is greatly
strengthened by the decision of the Supreme Court
of the United States, in the case of *Marbury vs. Madison*, 1 *Cranch.*, 49.

The original jurisdiction of that court is, by the
second clause of the second section, art. 3, of the Constitution of the United States, limited to " all cases affecting ambassadors, other public ministers and consuls, and those in which a State shall be a party." In
all the other cases arising under the Constitution and
laws of the United States, with such exceptions and
under such regulations as the Congress should make,
its jurisdiction was appellate.  The Constitution of the
United States, in the distribution of the judicial powers, expressly and affirmatively limited the original
jurisdiction of the Supreme Court to the cases above
named.  The reasons for conferring that jurisdiction
are obvious.  But that instrument, by the affirmative
words of limitation, excludes all other original jurisdiction, unless it be granted by words of equal affirmative import.  But it omits to give that court jurisdiction to issue this class of prerogative writs, and to hear
and determine the same.  Congress undertook to supply that omission, by giving to the Supreme Court of
the United States the power to issue the writ of mandamus to certain officers, in certain cases.  But the
Supreme Court held that, as the Constitution had
omitted to confer jurisdiction in regard to such writs,
Congress could not supply it, and that the court could
only use the writ in the exercising of its appellate jurisdiction.  But our Constitution has expressly and
affirmatively granted the jurisdiction of this and other

JUNE TERM,
1853.

Attorney
General
vs.
Blossom.
writs of that class, and our legislature has provided the mode and means of its exercise.

Had the Constitution of the United States in addition to the cases of original jurisdiction, declared that the Supreme Court should have power to issue writs of *mandamus*, &c., and to hear and determine the same, is it to be believed that, that court would have pronounced that solemn act of Congress unconstitutional and void ? The legislature of this State, at its subsequent sessions, seems to have put the same construction upon this section of the Constitution, that we have. They have provided full and perfect means for the Supreme Court in the exercise of this jurisdiction. These acts were framed by some of the very men who framed the Constitution itself. They were acted upon by this court from time to time, and carried out, without question. It is singular, indeed, that the jurisdiction of these writs, should be unquestioned by the framers of the Constitution acting some in the legislative department and some in the judicial, organized by it.

We entertain the highest respect for the former decisions of this court, and will abide by them, unless a controlling sense of our obligations of conscience and duty shall impel us to dissent from them. The cases in which jurisdiction in these writs was denied by the court are not reported. In one case, it is true, there is on file the opinion of a majority of the court, denying it, and in the same case, is found also a dissenting opinion by one member of that court who was also a member of the convention which framed the constitution, and another member of that court who is understood to have dissented, was also a member of the convention, and one of the judiciary committee

June Term
1853.

Attorney
General
vs.
Blossom.

who reported the article, and is now a member of this court and concurs in this decision. It is left to the judgment of the profession, what degree of control that and the like decisions should exercise in the adjudication of the question now presented.

It is said, that the legislature has abolished the writ of *quo warranto*, and that the proceeding in this case is not the exercise of the power granted by the Constitution. It is true the legislature have abolished the writ. But in doing so, they have not abolished the subject matter of operation. They have only offichanged the form, not the substance. They have only substituted one mode of proceeding for another, having in view the same object, without at all impairing its efficacy. If ever the time comes when the legislature shall abolish altogether the remedy contemplated by the writ of *quo warranto*, and shall leave the offices and franchises of the people exposed to intrusion and violation; the State through its proper functionaries may apply to this court, for the constitutional defences which it has entrusted to our jurisdiction, and such determination will be made as the nature and emergency of the case may legally require.

The motion is denied with costs.