EVERITT v. BOARD COUNTY COMMISSIONERS HUGHES COUNTY, *et al.*

1. The jurisdiction conferred upon the supreme court by the constitution is primarily appellate, and that of exercising a superintending control over all inferior courts.

2. Original jurisdiction is conferred upon that court to issue the writs of *habeas corpus, mandamus, quo warranto, certiorari,* and other original and remedial writs, with authority to hear and determine the same; but as these writs at common law were prerogative or *quasi* prerogative writs, the supreme court will, in general, only issue them for prerogative purposes.

3. They should only issue from the supreme court when the interests of the state at large are directly involved, in the preservation of its sovereign prerogatives, or its franchises, in the protection of its offices from usurpation, intrusion, or invasion, or for the protection of the liberty of its

citizens, except in special cases, or when, for some peculiar cause, application cannot properly be made to a subordinate court.

4. This original jurisdiction will, generally, only be exercised by that court in cases prosecuted in the name of the state, and on the . relation or information of the attorney general.

5. That court will only exercise its original jurisdiction to enforce a private or local right in special cases, or where, for some peculiar reason, application cannot properly be made to a subordinate court.

6. The application for a writ for *certiorari* in this case was made upon the affidavit of petitioner, who sets forth therein that he is a taxpayer of Hughes county, and that, if certain alleged illegal acts of the board of county commissioners of said county establishing election precincts in certain unorganized counties are allowed to stand, his burden of taxation will be increased. *Held*, that the facts stated are not sufficient to call into exercise the original powers of the supreme court, without showing some special reasons why application is not made to a subordinate court.

7. The statement in petitioner's affidavit that there will be no term of the court held in said Hughes county before the election, at which such alleged expenses would be incurred, does not state a sufficient reason for not applying to the inferior court.

(Syllabus by the Court. Argued Oct. 7, 1890. Opinion filed Dec. 3, 1890.)

Application for writ of *certiorari*. Denied.

The facts and the nature of the proceedings are stated in the opinion. No briefs filed.

*A. W. Burtt, H. S. Mouser, A. B. Melville* and *L. W. Crofoot,* for petitioner.

*Loring E. Gaffy, Crawford & DeLand* and *H. R. Horner,* for defendants.

CORSON, P. J. Application was made to this court on the 26th day of September, 1890, for a writ of *certiorari* to the board of county commissioners of Hughes county and C. N. Hawley, county auditor, commanding them to certify to this court a transcript of the record of the proceedings of said board of county commissioners, relating to the establishment of certain election precincts in the unorganized counties of Nowlin and Sterling, and the appointment of judges and clerks of election therein by said board. The application was made upon the affidavit of Thornton S. Everitt, petitioner, who sets forth in his affidavit, briefly stated, that he is a party beneficially interested, is a tax payer of said Hughes county, and a

resident of the State of South Dakota, and that by reason of the acts of said board in establishing election precincts in said unorganized counties of Nowlin and Sterling, and the appointment of judges and clerks of election therein,—all which acts he sets out in full, and alleges that they are illegal and void,—expenses will be incurred for such judges and clerks of election, furnishing ballot boxes, printing, etc., that will impose on him additional burdens as a tax payer of said Hughes county. He further states that the reasons why application was not made to the circuit court, or judge of the court having jurisdiction, are that "there is no circuit court in session in said Hughes county, and that there will be no term of said court in said county until after election, and that the supreme court has full jurisdiction of the matter." Upon the filing of said petition, an order to show cause why said writ should not issue as prayed for was granted by this court, returnable on the 2d day of October, 1890, on which day the parties appeared by their respective counsel. The counsel for the board of county commissioners and said C. N. Hawley, auditor, moved the court to dismiss the order to show cause and deny the writ on several groun 1s, only two of which do we deem it necessary to consider at this time, and these are: *First,* that no sufficient grounds are stated in the affidavit for calling into exercise the original jurisdiction of this court; and, *second,* that no sufficient reasons are shown why the application was not made to the circuit court or judge having jurisdiction. The disposition of this application and motion necessarily involves a construction of the sections of our constitution conferring jurisdiction upon the supreme court. Sections 2 and 3 of Article 5 define and prescribe the jurisdiction of the supreme court, and are as follows: "Sec. 2. The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law. Sec. 3. The supreme court and the judges thereof shall have power to issue writs of *habeas corpus.* The

supreme court shall also have power to issue writs of *mandamus*
*quo warranto*, *certiorari*, injunction, and other original and rem-
edial writs, with authority to hear and determine the same in
such cases, and under such regulations, as may be prescribed
by law, provided, however, that no jury trials shall be allowed
in said supreme court; but, in proper cases, questions of fact
may be sent by said court to a circuit court for trial before a
jury." Section 2, it will be seen, makes provision—*First*, for
the appellate jurisdiction of this court; and, *second*, for its gen-
eral superintending control over all inferior courts. This sec-
tion clearly defines the primary jurisdiction of the supreme
court, and points out specifically the power and authority it is
primarily intended this court shall exercise.

This court being constituted as the highest court under our
judicial system, it was exceedingly appropriate that its juris-
diction should extend primarily to the review of all the pro-
ceedings and determinations of the inferior courts, and to the
exercise of a superintending control over those courts. By
other sections of the constitution, the framers of that instru-
ment have conferred upon the inferior courts original jurisdic-
tion over all controversies arising between private parties, and
it was no doubt their intention to leave to such courts the dis-
position of all cases affecting purely local or private rights,
subject to review by this court. Such jurisdiction was intended
to be, and is, adequate, and affords ample facilities to liti-
gants in all cases for the redress and protection of such purely
private rights. We may assume, then, that the enforcement of
these private and local rights—for the determination of which
inferior courts have been provided, subject to the appellate
jurisdiction of the supreme court—was not in the mind of the
framers of the constitution when they adopted Section 3. But
it was no doubt in the mind of that body that emergencies
might arise where the protection of the prerogatives and fran-
chises of the state in its sovereign character—the prevention of
the usurpation of its offices, the protection of its legally or-
dained officers from intrusion and invasion, the protection of
the liberty of the citizen, the preserving pure and unimpaired

the various departments of the government, the determination of controversies in which the people of the state, or a large part of them. were directly interested, and the disposition of matters which for some special cause could not properly be brought before. an inferior court—might require the intervention of the highest judicial tribunal of the state. It was for these, and other reasons, that might be suggested, that it was deemed necessary and proper to confer upon the supreme court original jurisdiction to issue the high prerogative writs of *habeas corpus, mandamus* and *quo warranto*, also the high remedial judicial writs of *certiorari* and injunction, and other original and remedial writs, with authority to hear and determine the same under such regulations as may be prescribed by law.

As the power to issue these writs is also conferred upon the circuit courts and the judges thereof, by Section 14 of the same article, it is not to be presumed that the framers of the constitution intended that the supreme court should ordinarily exercise a concurrent jurisdiction with the circuit court in all cases in which these writs might afford an appropriate remedy. These writs, being in their nature prerogative or *quasi* prerogative, appertain to, and are the peculiar instruments of, the sovereign power, acting through its appropriate departments, and from their nature belong to the highest court of the state. They do not appertain or belong to inferior courts, and authority to issue them can only be exercised by such inferior courts when specially conferred by the sovereign power. It would seem, therefore, that the power to issue these writs by the supreme court should be exercised, generally, only for prerogative purposes, in cases where the interests of the state are in some way directly involved, in the preservation of its sovereign prerogatives or its franchises, in the protection from usurpation of its offices, and from invasion and intrusion, its legally constituted officers. and the liberty of the citizens. We say "generally," for no doubt cases may arise where, in furtherance of justice, and by reason of the existence of special causes, the subordinate courts are inadequate to furnish the relief

sought; or may, by reason of interest or other cause, be unable to do so.

It is quite apparent that the primary and principal object of the creation of the supreme court was to make it an appellate court with authority to exercise a superintending control over the inferior courts; and it was the intention of the framers of the constitution, in conferring original jurisdictions upon that court, that this original jurisdiction should be exercised only in cases where ordinary jurisdictions and ordinary remedies were not adequate to give the relief sought. This, it seems to us, is clearly indicated by the various provisions relating to the judicial department. To hold that this court should exercise its original jurisdiction and concurrently with the circuit court except where adequate reasons are shown why this original power should be exercised would impose a serious burden upon this court, and greatly impair its usefulness as an appellate court, and in a measure defeat the primary and principal object of its creation. We are of the opinion, therefore, that original jurisdiction was conferred upon this court, to be exercised by it only in cases which, in the judgment of this court, call for its exercise.

It is not easy, if indeed it would be advisable, to define definitely all the cases or classes of cases in which this court will exert its original powers. These must rest, as the constitution has left them, in the sound discretion of this court, to be exercised or denied as the circumstances of the given case may demand. It may, however, be proper to say that this original jurisdiction will not ordinarily be exerted to enforce a merely private or local right where no sufficient cause is shown why application cannot be made to a subordinate court. For the protection and enforcement of such rights, the inferior courts are clothed with adequate powers, and to them the citizen must ordinarily look for such protection. It is only for some cause peculiar to his particular case that a private party will be authorized to invoke the exercise of the original jurisdiction of this court; and, generally, this exercise of the original powers of this court must be invoked by the attorney general,

in the name of the state. We say again "generally," as we do not wish to be understood as holding that this court will not in any case assume original jurisdiction unless the attorney general shall consent to the use of his name, as satisfactory reasons may be shown why such officer refuses to assume the responsibility of prosecuting in the case; nor do we wish to be understood as holding that jurisdiction will be assumed by this court simply because an information or relation is filed by the attorney general. The character of the case itself must govern us in the exercise of this original power, or the peculiar causes that excuse a party from proceeding in a subordinate court, when the aplication is made by a private party for the enforcement of a private or local right, must be satisfactory to this court. The views here expressed are supported by the decisions of the courts of a number of states having similar or identical constitutional provisions with those of our own state. Attorney General v. Blossom, 1 Wis. 317; Attorney General v. Railroad Cos., 35 Wis. 425; Attorney General v. Eau Claire, 37 Wis. 400; State v. Baker, 38 Wis. 79; Gallardo v. Hannah, 49 Cal. 136; Menzies v. Board, 62 Cal. 179; Tucker v. Parker, 50 Mich. 5, 14 N. W. Rep. 676; Vail v. Dinning, 44 Mo. 214; State v. Ashley, 1 Ark. 309; Price v. Page, 25 Ark. 527; Wheeler v. Irrigation Co., 9 Colo. 248, 11 Pac. Rep. 103.

In the case at bar, the only facts alleged for calling into exercise the original jurisdiction of this court are that the appellant is a tax payer of Hughes county, and that, if the proceedings of the board of commissioners of Hughes county are allowed to stand, his burden of taxes will be increased; how much is not made to appear. In any event, the sum must necessarily be quite insignificant, as the total expense to the county for judges, clerks of election, ballot boxes, printing, etc., in the precincts in the alleged unorganized counties, cannot amount to any very considerable sum for the whole county, of which, of course, petitioner could only be called on for his proportion. But whether the amount of the additional taxes he will be called upon to pay be large or small, the injury alleged

is, so far as appears from the petition, purely a personal or private one.

If, therefore, the law affords him a remedy, he can obtain it in the inferior court. The fact that the circuit court was not in session in Hughes county, and that there would be no term of said court before election, presents no sufficient reasons for not applying to that court or judge thereof, as by the provisions of the fourteenth section, the writ applied for in this case could have been issued, heard and determined by the judge. The petitioner may, no doubt, desire to have a speedy determination of his case, and that without the delay and expense attending an appeal to this court; but these are reasons that could be urged in most cases, and, if held good, a most dangerous precedent would be established—one that would manifestly impose great inconvenience and hardship upon the people of the state. It happens in this particular case that this court is held at the county seat of defendant county, but the same rule must govern in this case that would be applied in a case where it was sought to review the proceedings of a board of county commissioners of one of the counties most distant from the state capital. The writ is therefore denied. All the judges concurring.