[No. 5977.]

The People ex rel. Graves et al. v. The District Court of the Second Judicial District and Frank T. Johnson, One of the Judges Thereof.

1. **Constitutional Law—Courts—Supreme Court—District Courts —Original Jurisdiction—Elections.**

Art. 6, § 11, Colo. Const., providing that "district courts shall have original jurisdiction of all causes both at law and in equity, and such appellate jurisdiction as may be conferred by law," does not authorize such courts to control and supervise an election merely because the supreme court has assumed a similar jurisdiction, since to so hold would render the original jurisdic-

tion of the supreme court and the district courts the same, and thereby the supreme court would be entirely without authority to review on appeal or error any judgment in such causes, as conferred by art. 6, § 2, of the same instrument.—P. 449.

2. **Constitutional Law—Courts—Supreme Court—District Courts —Jurisdiction—Prerogative Writs—Nature of Writs.**

Art. 6, § 11, Colo. Const., provides that "district courts shall have original jurisdiction of· all causes, both at law and in equity"; and § 3 provides that the supreme court "shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction and other remedial writs, with authority to hear and determine the same." One confers jurisdiction of causes; the other confers the power to issue certain writs, with authority to hear and determine. The fundamental law created the jurisdiction of each; and, by so doing, it necessarily excludes from the one the jurisdiction it confers upon the other.—P. 450.

3. **Constitutional Law—Beginning of the Law—Common Law.**

The constitution of a state is not the beginning of the law for a state. Under our system of jurisprudence it assumes the existence of the common law, from which we must draw in interpreting its provision, under such limitations as the constitution itself imposes.—P. 451.

4. **Constitutional Law—Courts—Supreme Court—District Courts —Jurisdiction—Issue of Prerogative Writs.**

Art. 6, § 2, Colo. Const., provides that the supreme court shall have appellate jurisdiction and superintending control over all inferior courts; § 3 provides that it shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction and other remedial writs; and § 11 provides that district courts shall have original jurisdiction in all causes both at law and in equity. Held, that the writs mentioned, which the supreme court is authorized to issue in the first instance, are the high prerogative writs of the common law; that the supreme court alone is authorized to issue them, because it is the highest judicial tribunal in the state, and is vested with exclusive authority to exercise supervisory control over all others; and that these writs can only be employed in proceedings which involve the sovereignty of the state, its prerogatives or franchises, or the liberty of its citizens.—P. 459.

5. **Courts—Supreme Court—District Courts—Elections.**

The state, in its sovereign capacity, has the authority, for the purpose of protecting the rights and liberties of its citizens, to institute a proceeding for the purpose of securing an honest election; but, as matters of this kind in no way involve private

rights, but are strictly public, they can only be considered in the supreme court, which has authority to issue prerogative writs applicable thereto.—P. 460.

6. **Constitutional Law—Courts—Supreme Court—District Courts —Jurisdiction—Elections.**

The right of courts to supervise and control elections is dependent on the right to issue the high prerogative writs of the common law, which right is not possessed by the district courts but is vested in the supreme court by the constitution; and the fact that franchises involving property rights are to be voted on at such election, does not change the rule.—P. 460.

7. **Constitutional Law—Courts—Supreme Court—District Courts —Jurisdiction—Code Provisions.**

The original jurisdiction conferred upon the supreme court by the constitution is not dependent upon or governed by either the statutes or the code; but the district courts are governed by the code in so far as it relates to civil actions.—P. 461.

8. **Courts—Protecting Public Rights—Attorney General—District Attorney.**

It is fitting that causes intended to protect public rights should be inaugurated before the appropriate tribunal by either the district attorney or the attorney general, as the case may be; and while it is not absolutely necessary that either of these officials should consent to the bringing of such action, practice requires that it at least appear to the court, in which such action is instituted, that one or the other of these officials refuse to act, before permitting it to be commenced by a private individual. —P. 461.

9. **Courts—Jurisdiction—Elections—Notice.**

A proceeding was begun in the district court to supervise elections, prevent frauds, and take such steps and enter such orders as might be deemed necessary for that purpose. A writ of prohibition was issued against respondents to prevent them from committing certain acts, and watchers were also appointed After the election, an election judge was arrested for contempt for an alleged interference with a watcher; a subpœna was issued requiring the county treasurer to produce certain original books of record; the ballot boxes were ordered stored in another building than the one designated by law; several hundred citizens and taxpayers, who voted at the election, were ordered to appear for examination; and all of these orders were mandatory and without notice to the parties affected thereby. Held, that, as the district courts are governed by the code in so far as it relates to civil actions, and as such causes should be inaugurated

by either the district attorney or attorney general, as the case may be, or at least it should be made to appear to the court that such officials refuse to act before it permits such actions to be commenced by private individuals, such orders were without authority.—P. 461.

### Original Proceeding in Prohibition.

Original proceeding in prohibition by the people of the state of Colorado on the relation of Francis F. Graves, Edward C. Soetje, and Harry C. Riddle, constituting the temporary election commission of the city and county of Denver against The District Court of the Second Judicial District and Frank T. Johnson, one of the judges.

Decision *en banc.*          *Writ granted.*

Mr. Justice Steele and Mr. Justice Gunter dissenting.

Mr. H. A. Lindsley and Mr. J. M. Waldron, for petitioners.

Mr. Lucius A. Hoyt, Mr. Edward P. Costigan and Mr. A. J. Fowler, for respondents.

Chief Justice Gabbert delivered the opinion of the court:

The only question presented for our consideration is the one of the jurisdiction of the district court, the authority of which is raised by the petition for a writ of prohibition. Prior to the election held in the city and county of Denver on the 15th day of May last, a petition, or what was also termed an original bill in equity, was filed in the district court presided over by the respondent judge. The purpose of the election was to elect certain officials for the city and county of Denver and to submit the question of granting or refusing certain franchises to certain named corporations. The petition was by

the people, on the relation of J. S. Temple, a tax-payer and an officer of a voluntary organization known as the "League for Honest Elections," the purpose of which was to institute and carry forward measures to secure an honest election. To this peti-tion the election officials in the various precincts, the sheriff, members of the fire and police board, the chief of police, the members of the temporary elec-tion commission, and the county clerk of the city and county of Denver were named as respondents. The bill stated that the respondents had conspired to pre-vent a free, open, and fair election on the date men-tioned, by unlawfully securing the defeat of certain candidates, and to bring about and secure the adop-tion or defeat of all or certain of the franchises to be voted upon. The facts upon which the conspiracy charged was based were stated principally, if not wholly, upon information and belief. Without enter-ing into details, it is sufficient to say that the general purpose of the proceeding was to supervise the elec-tion, prevent frauds, take such steps and enter such orders as might be deemed necessary in order to effect the purpose for which the action was insti-tuted. The petition prayed for the issuance of a writ which would prohibit the respondents from commit-ting the acts which it was said they would commit unless restrained. The appointment of watchers was also asked. The writ was issued as prayed, and watchers appointed. On the 19th day of May, Elec-tion Judge Fairhurst was charged with contempt, in that he had interfered with the function and powers of one of the district court watchers. An attachment was issued by the respondent judge, upon which he was arrested and required to give bail conditioned for his appearance before the court on May 26th. On the same date the order for his arrest was issued, the respondent judge issued a subpoena re-

quiring the county treasurer of the city and county of Denver to forthwith appear before the court and bring with him original books of record required by law to be kept in the treasurer's office. In obedience to this order, the books mentioned were produced before the respondent judge and there examined, and thereafter the same were taken from the custody of the treasurer and retained by the court or judge. On the same date, a further order was made by the respondent judge, commanding the election commission to remove the ballot boxes containing the ballots cast on the franchises from where they were stored, as the law required, to another building designated in the order. The commission objected to the order, upon the ground that the respondent judge was without legal authority to make the same, and, on the next day, he verbally ordered all ballot boxes, containing ballots cast at the election, removed to the building designated in the order, which was accordingly done. On the 19th day of May, the respondent judge also issued citations to several hundred citizens and taxpayers who had voted at the election, commanding them to appear before him on Monday, the 21st, and there be examined under oath. At this juncture in the proceedings in the district court, a petition for a writ of prohibition was presented to this court, and a temporary order entered restraining the respondent judge and the district court, of which he is one of the judges, from proceeding further until the question of the jurisdiction of the district court and his authority in the premises should be determined.

Our constitution provides: "The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts, under

such regulations and limitations as may be prescribed by law."—Section 2, article 6.

The next section provides: "It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari,* injunction and other remedial writs, with authority to hear and determine the same."

The jurisdiction of the district courts of the state is designated by section 11, of article VI, as follows: "The district courts shall have original jurisdiction of all causes, both at law and in equity, and such appellate jurisdiction as may be conferred by law."

On behalf of respondent, counsel urge that, by virtue of these provisions and on the authority of the Tool case, decided by this court in 1904, in which jurisdiction was assumed to secure an honest election in certain precincts of the city and county of Denver (the election was state and national), that the district court has the same power and authority as this. This position is manifestly untenable, for the obvious reason that, to so hold, would render the original jurisdiction of this and the district courts the same—would make them courts of concurrent jurisdiction, and thereby this court would be entirely without authority to review, on appeal or error, any judgment of a district court rendered in such causes. The rule is settled beyond dispute that courts of concurrent jurisdiction cannot review the action of each other. It certainly was never the intention of the framers of the constitution to provide that a court consisting of one judge should have the same power as that vested, at the time of its adoption, in three, and now, by an amendment, in seven. It certainly was not the purpose of the constitution to vest in the supreme court and district courts the same original jurisdiction, and thereby deprive the supreme court of the power to review the action of the district court

in certain causes; for such would be the inevitable result if our constitution was construed to mean that the original jurisdiction conferred upon the supreme court in certain causes was identical and concurrent with that of the district courts.

It is a canon of construction that effect must be given to every part of the language employed in a law, unless to do otherwise is clearly justified. It is also a maxim of the law that the mention of one thing is the exclusion of the other. This maxim is particularly applicable when that which is expressed is creative, for then it becomes exclusive. The constitution must be construed as a whole, and given that construction of which it is susceptible which will render its various parts harmonious, and express the purpose and intent of the people in adopting it. It will be observed that the language of the constitution conferring jurisdiction upon the district courts is that these tribunals "shall have original jurisdiction of all causes, both at law and in equity," while the language employed in conferring original jurisdiction upon the supreme court is that "it shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari,* injunction, and other remedial writs, with authority to hear and determine the same." The difference is marked. One confers jurisdiction of causes; the other confers the power to issue certain writs, with authority to hear and determine. Evidently there was a purpose in employing this difference in language, and that purpose could have been none other than to designate the character of actions of which the respective courts should have original jurisdiction. The fundamental law creates the jurisdiction of each. By so doing, it necessarily excludes from the one the jurisdiction it confers upon the other. Unless so construed, effect is not given to every part of the language employed

in designating the original jurisdiction of the respective courts, and the rule that what is creative is exclusive, ignored, which would result in holding that, in all cases in which the writs mentioned in the constitution could be issued, the jurisdiction of the supreme and district courts was co-ordinate, and, in such cases, the former could not review the action of the latter.

The important question to determine is, In what class of cases was original jurisdiction conferred upon the supreme court by virtue of the constitutional provision on the subject?—because it is manifest, for the reasons given, that, as to this class of cases, original jurisdiction was not conferred upon, nor can it be exercised by, any other tribunal. In determining this question, we shall consider the character of the writs mentioned, the court authorized to issue them, and the proceedings in which they may be employed, according to the rules of the common law. We say "according to the common law," because constitutional provisions are to be construed with reference to that system of jurisprudence. The framers of our constitution are presumed to have intended no change or innovation in the common law further than is expressly or by necessary implication declared. Many provisions of the constitution and of our statutes could not be understood without reference to the common law.—6 Am. & Eng. Enc. Law (2d ed.) 931; *Moore v. United States,* 91 U. S. 270, 274; Cooley's Constitutional Limitations, *60.

The constitution of a state is not the beginning of the law for a state. Under our system of jurisprudence, it assumes the existence of the common law from which we must draw in interpreting its provisions, under such limitations as the constitution itself imposes.

As long ago as 1885, this court, in *Wheeler v. N. C. Irrigation Co.,* 9 Colo. 248, in an opinion by Mr. Justice Helm, held that all the writs referred to in the section conferring original jurisdiction upon the supreme court, except injunction, were prerogative writs of the old common law, and that the writ of injunction, by reason of association, must be regarded as *quasi*-prerogative.

Wisconsin has a constitutional provision which, in 1853, at the time when it was construed by the supreme court of that state, was identical with our own as it existed in 1885. It provided: The supreme court "shall have power to issue writs of *habeas corpus, mandamus,* injunction, *quo warranto, certiorari* and other original and remedial writs, and to hear and determine the same."

The only difference between the Wisconsin provision and ours, as amended subsequent to 1885, is, that the words "original writs" have been omitted, so ours now reads "and other remedial writs" instead of "and other original and remedial writs."

The pioneer case upon the subject determining the character of the writs named in the Wisconsin constitution, and which has been followed by the supreme court of every state having a similar one, is *Attorney General v. Blossom,* 1 Wis. 317, decided in 1853, where it was expressly held that these writs were prerogative. This view was adopted and followed in 1874, in the celebrated case of *Attorney General v. Railroads,* 35 Wis. 425, the opinion being by that eminent jurist, and one of the ablest judges this country has ever produced, Mr. Chief Justice Ryan.

The supreme court of South Dakota, in 1890, in the case of *Everitt v. Board of County Commissioners,* 47 N. W. 296, in considering a constitutional provision similar to our own, held that these writs were

the high prerogative writs of the common law. This was followed by a decision of the supreme court of North Dakota, in 1896, to the same effect, in considering a similar constitutional provision, in the case of *State v. Archibald,* 66 N. W. 234; and again announced by the same court in 1902, in *Duluth Elevator Co. v. White,* 90 N. W. 12.

From cases on the subject of prerogative common-law writs, we learn that they could only be issued by the highest court of England, which was vested with power to review the proceedings of and keep all inferior courts within the bounds of their authority.

In *Kendall v. United States,* 12 Pet. (U. S.) 608, the court had under consideration the character of the writ of *mandamus,* and declared it to be a prerogative writ of the common law. In considering what court, according to the common law, was authorized to issue such prerogative writ, Mr. Chief Justice Taney, at page 629 of 12 Pet., said:

"But, by the principles of the common law, and the laws of Maryland as they existed at the time of the cession, no court had a right to issue the prerogative writ of *mandamus* unless it was a court in which the judicial sovereignty was supposed to reside, and which exercised a general superintendence over the inferior tribunals and persons throughout the nation or state. In England, this writ can be issued by the king's bench only. It cannot be issued by the court of common pleas, or any other court known to the English law, except the court of king's bench."

And, in speaking of the authority of that court, quoted the following from Blackstone: "The jurisdiction of this court is very high and transcendent. It keeps all inferior jurisdictions within the bounds of their authority, and may either remove their pro-

ceedings to be determined here or prohibit their progress below.''

After further comments on the character of the writ, and the authority of the court of king's bench to issue it, the learned chief justice says: ''It is therefore evident that, by the principles of the common law, this power would not be incident to any court which did not possess the general superintending power of the court of king's bench, in which the sovereignty might, by construction of law, be supposed to sit.''

Mr. Justice Thompson, who also delivered an opinion in the same case, after stating that the writ of *mandamus* is a prerogative writ, said: ''And the power to issue this writ is given to the king's bench only, as having the general supervisory power over all inferior jurisdictions and officers, and is coextensive with judicial sovereignty. And the same theory prevails in our state governments, where the common law is adopted and governs in the administration of justice; and the power of issuing this writ is generally confided to the highest courts of original jurisdiction.''

What was said by the highest tribunal in this country with respect to one of the prerogative writs of the old common law, is necessarily applicable to all others of the same class, in so far as the questions in the case at bar are involved. In the Wheeler case, *supra,* this court recognized that the writs designated in the constitution, which the supreme court was empowered to issue by virtue of the original jurisdiction conferred, bore no resemblance to the usual process of courts by which controversies between private parties are settled ·by judicial tribunals of every grade, and that the ordinary process by which delinquent parties are brought before courts to respond for purely private injuries was not in the

mind of the constitutional convention when it framed
the section conferring original jurisdiction upon this
court. This must necessarily be true; otherwise, as
suggested, the jurisdiction of the supreme and dis-
trict courts would be co-ordinate in those actions in
which these writs might issue.

In the case of *Attorney 'General v. Blossom,*
*supra,* the court, in the course of the opinion, said:
"This class of writs, it would seem, appertain to and
are peculiarly the instruments of the sovereign
power acting through its appropriate. department,
prerogatives of sovereignty, represented in England
by the king and in this country by the people in their
corporate character, or, in other words, the state, and
from their very nature, from their peculiar charac-
ter, functions and objects appertain to and appropri-
ately belong to the supreme judicial tribunal of the
state. Being prerogative writs, they do not pertain
to courts of inferior jurisdictions.   *   *   *   These
writs differ essentially in their character and objects
from ordinary writs issued by the courts in the reg-
ular and usual administration of the law between
parties. They go to accomplish peculiar and spe-
cific objects, carrying with them the special mandate
of the sovereign power, addressed to the person, cor-
poration or officer, requiring them to do or not to do,
to proceed or to desist, to perform the duty required
by law, or to abstain from the exercise of power
without lawful authority. They bear no resemblance
to the usual processes of courts by which controver-
sies between private parties are settled by the judi-
cial tribunals of every grade. Hence, it would seem
to be apparent that the appropriate court in which
the jurisdiction of this class of writs should be
lodged is the supreme court of the state, and some-
thing more than mere implication is required to

divest that court of such jurisdiction or transfer it to another."

In *Everitt v. Board, supra,* the supreme court of South Dakota, speaking of the courts from which these writs may issue, said: "These writs, being in their nature prerogative, or *quasi*-prerogative, appertain to, and are, the peculiar instruments of the sovereign power, acting through its appropriate departments, and from their nature belong to the highest court of the state." On this subject the decisions of the supreme court of North Dakota, to which we have already referred, are that the power to issue these prerogative writs is vested in the supreme court alone.

The views expressed in the Wheeler case, *supra,* are reinforced by the construction of the legislative department as to the jurisdiction of the district courts. That branch of the government evidently construed the jurisdiction of these tribunals to be limited to civil actions in matters purely private, because the first section of our Civil Code provides that there shall be but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs. It is true that, in actions which only involve private rights, writs and processes are employed which are designated by name the same as those which this court is authorized to issue; but they are not prerogative writs of the common law, and are intended, as the code designates, to be employed in adjusting controversies between private parties, in tribunals having original jurisdiction thereof.

From a perusal of the opinion in *Attorney General v. Railroad Companies,* we learn, at page 521 of 35 Wis., that, by constitutional provision of the state of Wisconsin, the circuit courts, which correspond to the district courts of our state, are empowered to

issue certain named writs. We have referred to the fact that the supreme court of that state is vested with the authority to issue specific writs. The writs are named the same in each instance. In speaking of the jurisdiction conferred upon the respective courts by reason of these provisions, the learned judge writing the opinion remarks: "It is impossible for a lawyer to suppose that they are granted in the same sense and with the same measure of jurisdiction to this court as to those courts. Such a proposition would shock the legal sense of any professional man."

It is important to bear in mind that, by the constitution of North Dakota, the district courts are empowered to issue writs bearing the same name as those authorized to be issued by the supreme court. Notwithstanding this fact, the supreme court, in *Duluth Elevator Co. v. White, supra,* held that the supreme and district courts did not have concurrent jurisdiction of these writs. On this point, the court said: "The constitution makers did not intend to give concurrent jurisdiction to the two courts with respect to the writs in question; but, on the contrary, it was the intention to require all suitors to apply to the district courts when these writs, or either of them, is sought as a means of enforcing strictly private rights or the redress of private wrongs. On the other hand, the cases already decided by this court clearly lay down the rule (except where the writs are sought for in aid of the appellate jurisdiction of this court, or in the exercise of its supervisory control over inferior courts) that the writs in question will issue only as prerogative writs."

We deem it important, also, to call attention to the fact that, at the time our constitution was adopted (1876), the language employed in conferring original jurisdiction upon this court was iden-

tical with that of Wisconsin's constitution, and that the Wisconsin cases to which we have referred were then decided, so that it is altogether probable the framers of our constitution, in adopting the identical language employed in that of Wisconsin, did so with full knowledge of the construction which the supreme court of that state had theretofore given to that provision conferring original jurisdiction upon the highest tribunal of the state. The language used in the constitution of Wisconsin to define the original jurisdiction of the supreme court of that state was brief and comprehensive. At the time our constitution was adopted, the supreme court of that state had declared that the original jurisdiction conferred was only over a peculiar class of writs, in their nature, functions and objects not appropriate to appellate, but original, jurisdiction. Speaking to this point, it was said, in *Attorney General v. Railroads*, 35 Wis., beginning at page 517: "The constitution wisely, almost necessarily, stopped with the general grants of jurisdiction, carefully distinguished, and left details to practice and experience" —an original jurisdiction, so far as the supreme court was concerned, it was said, on page 518, "It would not do to dissipate and scatter among many inferior courts," because its purpose was to confer original jurisdiction of such proceedings as might be necessary to protect the general interest and welfare of the state and its people.

The next question to consider is the character of the proceedings in which these writs may be employed. Generally speaking, they were issued under the common law by the court of king's bench, where the laws did not afford a sufficient or specific remedy. Speaking of that court, Blackstone says (*42): "It protects the liberty of the subject by speedy and summary interposition."

In this country, it is generally held by the courts of states having constitutional provisions for the issuance of these writs, that they are designed to protect citizens in their liberty and the people in their rights. On this subject, the supreme court of Wisconsin, in *Attorney General v. Blossom, supra,* said: "And why was original jurisdiction given to the supreme court of these high prerogative writs? Because these are the very armor of sovereignty; because they are designed for the very purpose of protecting the sovereignty and its ordained officers from invasion or intrusion, and also to nerve its arm to protect its citizens in their liberties and to guard its prerogatives and franchises against usurpation." The language is quoted with approval in *Attorney General v. Railroad Companies, supra.*

In *State v. Archibald, supra,* it was held, quoting from the syllabus: "This court has original jurisdiction in cases in which the writs named in the constitution may be employed to initiate such jurisdiction, but that jurisdiction is limited to cases involving the sovereignty of the state, its prerogatives or franchises, or the liberty of the citizens."

In the case of *Duluth Elevator Co. v. White, supra,* the question of the character of the cases in which the original writs authorized by the constitution to issue from the supreme court would be employed was under consideration, and the court held that they would not issue, except in cases *publici juris* affecting the sovereignty of the state, its franchises and prerogatives, or the liberties of its people.

From this review of the authorities it appears that the writs mentioned in the constitution, which this court is authorized to issue in the first instance, are the high prerogative writs of the common law; that this court alone is authorized to issue them, because it is the highest judicial tribunal in the state,

and vested with exclusive authority to exercise supervisory control over all others; and that these writs can only be employed in proceedings which involve the sovereignty of the state, its prerogatives or franchises, or the liberty of its citizens. It is undoubtedly true that the state, in its sovereign capacity, has the authority, for the purpose of protecting the rights and liberties of its citizens, to institute a proceeding the purpose of which is to secure an honest election, and prevent the commission of fraud which would result in depriving the electors of their right to an honest expression at the polls of any question which they may have the right to vote upon; but matters of this kind in no way involve private rights; they are strictly public, and can only be considered in the tribunal vested by law with authority to hear and determine them. It was for these reasons that this court assumed jurisdiction in the Tool case, 35 Colo. 225. It would not do, as suggested in the Wisconsin cases referred to, to dissipate and scatter jurisdiction for this purpose among many inferior courts.

Whether or not an election which did not affect the entire state could be supervised by this court, as in the Tool case, it is not necessary to determine, because no court can entertain an action for this purpose which does not possess the authority to issue prerogative writs; and this, we have seen, the district courts do not have. We think it is clear from the authorities that the power which the district court has attempted to exercise is beyond its jurisdiction.

But, it is contended on behalf of the respondent that the relators in the action instituted in the district court had property interests to protect, in that franchises were to be voted upon. For this reason, it is asserted that the action can be maintained. The power of the district court cannot extend to these

matters in the preliminary stages of voting upon them, because of its want of power to supervise elections of any character affecting the public only.

There are other reasons, some of which will be briefly noticed, why, in our opinion, the action of the district court was clearly without authority. When necessary to state, it has always been held by this court that the original jurisdiction conferred upon it by the constitution is not dependent upon, or governed by, either the statutes or code. The district courts are governed by the code, in so far as it relates to civil actions. In the prosecution and determination of civil cases, it must follow these provisions. If it be conceded, for the sake of the argument, that it had any authority to entertain the proceeding under consideration, it appears that it has violated many of the plain provisions of the code. The orders made to which we have referred were mandatory, and without notice to the parties affected thereby. This the code prohibits. It is also fitting that causes intended to protect public rights should be inaugurated before the appropriate tribunal by either the district attorney or attorney general, as the case may be. While it is not absolutely necessary that either of these officials should consent to the bringing of such an action, practice requires that it at least appear to the court in which such action is instituted that one or the other of these officials refused to act before permitting it to be commenced by a private individual. No such showing was made in the petition filed in the district court.

So far as advised, it does not appear that the election officials in any manner violated the order of the district court by knowingly permitting illegal votes to be cast, or by false counts, or by committing frauds of any character. If an order was necessary to prevent election officials from committing frauds,

it has served its purpose. The fraud charged is that persons voted who were not entitled to vote upon the franchises; but it is not claimed, so far as we are advised, that the election officials are responsible for this infraction of the law. The names of persons voting on the franchises are upon the poll books. It is not necessary to examine any one in open court, as was attempted by the respondent judge, to ascertain who voted on the franchises. Their qualifications to vote on these questions can be inquired into in any lawful proceeding which may be instituted to test the validity of the franchises voted upon. The records taken from the custody of the treasurer are public, and are open to inspection at all reasonable times. The custody of the ballot boxes by the district court was not in any manner interfered with by this court. The order which the respondent judge made, before the application for writ of prohibition to permit copies of the poll books to be made, was not interfered with. In fact, it was suggested by this court that the election commission should permit the copies to be made because the poll books were public records, and we understand such copies have been made; so it appears that the temporary restraining order of this court has not in the slightest degree interfered with the institution of appropriate actions to test the validity of the franchises or the preservation of testimony.

We mention these matters, not because they can be considered in determining the jurisdiction of the district court, but to show that temporarily restraining that tribunal, and finally prohibiting it from further proceeding in the action under consideration, has not in the slightest degree interfered with, and will not interfere with, those who purpose, in appropriate proceedings, to investigate and determine the honest result of the election upon the franchises.

Irregular practices get their first footing by silent approaches and slight deviations from lawful procedure, and, if not checked, the landmarks of the law will be obliterated, and the protection which the law is intended to extend to all classes by affording them an opportunity to defend or assert their rights according to established rules of procedure, would be rendered nugatory. No matter how urgent summary action may seem, courts cannot exercise a jurisdiction they do not possess, or depart from the established principle that all controversies submitted to a legal tribunal, whatever their nature, and without regard to who the parties may be, must be settled in a forum having authority to determine them, and that the rights of litigants must be adjusted according to the rules of law which the experience of centuries has formulated for that purpose. It is truly important that frauds should be unearthed, and the perpetrators punished; but it is of greater importance that in the efforts to do so, the law should not be transgressed. Apparent necessity for prompt action, the character of the parties, or the questions to be investigated, cannot be considered as the criterion for entertaining an action. In fact, there is but one, and that is the law. Otherwise, the rights of litigants are not measured or determined by fixed rules, but by the whim or caprice of the judge. In *United States v. San Jacinto Tin Co.*, 125 U. S. 307, it was said by Mr. Justice Field: "It is the theory, and, I may add, the glory, of our institutions, that they are founded upon law; that no one can exercise any authority over the rights and interests of others, except pursuant to and in the manner authorized by law."

The petition for the writ of prohibition is granted.

Decision *en banc.* *Writ granted.*

Mr. JUSTICE STEELE and Mr. JUSTICE GUNTER dissent.

Mr. JUSTICE STEELE, dissenting orally:

Mr. Justice Gunter and I dissent from the orders granting supersedeases in the cases against the district attorney, the sheriff, and the coroner, not because it is our opinion that the testimony taken proved that these officers were guilty of fraudulent practices in connection with the election, but because we are of opinion that the cases come within the doctrine announced in *The People v. District Court,* 29 Colo. 5, where the right of the district judge to appoint a special officer to advise the grand jury whenever he has reason to believe, from information which he considers reliable, that crimes have been committed and that the officer's conduct in connection therewith is such that it should be investigated, is expressly affirmed.

The opinion in the prohibition case against Judge Johnson was not submitted to Mr. Justice Gunter and to me until Friday last. It has been modified since. We have not, therefore, had time to prepare an extended dissent. We dissent from the judgment because we regard the issuance of the writ in this instance as a misuse of the power. This court has held, many times, that it will not take original jurisdiction except where questions *publici juris* are involved, and where extraordinary and peremptory reasons exist.

We do not regard the questions involved as *publici juris,* and it is certain that the extraordinary and peremptory reason for issuing the writ is not disclosed by the record. Although the Tool case is without precedent, and is not based upon any recognized rule of equity jurisprudence, it is, nevertheless, until reversed, the law of this state. That case de-

clares that it is within the power of a court of equity to supervise elections by injunction. As the constitution clothes the district court with original jurisdiction of all causes of law and equity, when this court holds that it alone has the power of supervising elections it arrogates to itself an exclusiveness expressly disavowed in many of its opinions, and assumes a superiority denied it by the constitution.