STATE ex rel KRIEBS, Plaintiff, v. HALLADAY, Defendant.

(219 N. W. 125.)

(File No. 6668. Opinion filed April 10, 1928.)

*Clark & Wyman,* of Yankton, for Relator.

*Gardner & Churchill,* of Huron, for Defendant.

BROWN, J. By the provisions of chapter 275, Laws of 1925, which went into effect on July 1st of that year, section 5371 of the Code of 1919, relating to the board of charities and corrections, was amended, so as to create a new board, composed of three members, to be appointed by the Governor, by and with the consent of the Senate. Of those first appointed, the term of one member was to expire on July 1, 1927, of another on July 1, 1929, and the term of the third member on July 1, 1931. The regular term of the office is for six years. All members hold until their successors are appointed and qualify. On the day that the act took effect, Governor Gunderson appointed defendant, Halladay, for the term expiring July 31, 1931; official written notification of the appointment was filed in the office of the secretary of state on that day, and Halladay at once qualified and entered upon the duties of the office.

Const. art. 14, § 2, provides that members of the board of charities and corrections shall "be appointed by the Governor and confirmed by the Senate." The Legislature was not in session when the act went into effect, and its first session thereafter was convened on January 4, 1927. On that day Governor Gunderson's term expired and he was succeeded by Governor Bulow. On January 7th, the Senate, without notice of Halladay's appointment formally communicated to it, procured from the office of the secretary of state a certified copy of the notification on file there, and formally confirmed the appointment. On December 28, 1927, Governor Bulow, apparently on the theory that a vacancy existed in the office, appointed the relator, F. D. Kriebs, and Kriebs, having

qualified, demanded possession of the office, which was refused, and he brings this proceeding, in the nature of quo warranto, to determine the title to the office.

It is the contention of relator that the act of 1925 created a new board of charities and corrections, consisting of three members, and that, until the first appointments to these three offices were made, the offices were necessarily vacant; that therefore the appointment of the first three members was an appointment to fill vacancies, and that by the provisions of Code, § 5372, vacancies in the membeship of such board shall be filled by the Governor, "and the appointees to fill vacancies shall hold until the next session of the Legislature succeeding their appointment, at which time their term of office as vacancy appointees shall cease and appointments be made to fill the vacancies for the unexpired portion of the term, if any." Relator's contention is that, Halladay's appointment, being to fill a vacancy, his term expired with the next session of the Legislature succeeding his appointment, and, there being no appointment to the office thereafter until relator's appointment, he is legally entitled to the office.

He further contends that it is essential to the validity of Halladay's appointment that it be confirmed or concurred in by the Senate, and that, since Governor Gunderson's term of office had expired before any action was taken on the appointment by the Senate, there was no joint or mutual consent by the Governor and Senate to Halladay's appointment; that, the term of the Governor who appointed Halladay having expired, the Senate on January 7th assumed to confirm the action of one who was then only a private individual, and its confirmation could have no effect.

While it is true that a newly created office is necessarily vacant until an incumbent is provided for and installed in it (Driscoll v. Jones, 1 S. D. 8, 44 N. W. 726), we do not think that the vacancy so existing is such a vacancy as is contemplated by section 5372 of the Code. The vacancy referred to in this section is evidently such a vacancy as is defined in section 7007, resulting from death or resignation of the incumbent, or other causes mentioned in that section. That the vacancy referred to in section 5372 does not include a vacancy arising from the fact that the newly created office has never been filled is plain from the preceding section creating the office, which provides that the board

shall be appointed by the Governor by and with the consent of the Senate, and specifically designates the day upon which the term of each member shall expire. The law must be so construed as to give effect to all of its provisions, if that is possible, and to hold that the vacancy existing in the newly created office before an incumbent has been provided is such a vacancy as may be filled pursuant to the provisions of section 5372 would necessarily abrogate the express legislative enactment in section 5371 that the terms of the three members should expire on the dates named in that section. We therefore hold that section 5372 has no application to the vacancy existing in a newly created office before any one has been provided to fill it. State v. Rogge, 80 Mont. 1, 257 P. 1029.

We cannot agree with relator's reasoning that, since the Governor's appointment and the Senate's confirmation must be concurrent as to the subject of the appointment, and Governor Gunderson's term of office had expired before the Senate took any action, there could therefore have been no concurrence by the Governor with the Senate in its action on January 7th with reference to the appointment. This ignores the obvious fact that the office of Governor is a continuing one, irrespective of the person who occupies it. In this case the appointment of Halladay remained in force until it was acted upon by the Senate. On January 7th, while it was still in force, the Senate confirmed it. The appointment thereupon became complete, Halladay qualified, and has ever since been discharging the duties of the office, and therefore no vacancy existed on December 28, 1927, at the time the attempted appointment of relator was made.

It is contended by relator that, because the appointment of Halladay was never officially communicated to the Senate, that body had no jurisdiction or authority to act upon it. We find nothing in the Constitution or statutes of this state that prescribes the manner in which the Senate shall obtain knowledge of the appointment of a person to an office requiring its confirmation, and in the absence of constitutional or statutory provisions on the subject we see no reason why the Senate may not take official notice of the fact of such an appointment. It was so held in Barrett v. Duff, 114 Kan. 220, 217 P. 918; People v. Shawyer, 30 Wyo. 366, 222 P. 11; Commonwealth v. Stewart, 286 Pa. 511, 134 A. 392. We have been cited to no authority to the contrary, and a diligent search on our part has revealed none.

Defendant is entitled to the office for the term ending on July 1, 1931, and the order to show cause must be and is dismissed.

CAMPBELL, J. (dissenting). I concur for the most part in the legal propositions promulgated in the foregoing opinion, but I have grave doubts as to the jurisdiction of this court over this original proceeding. In view of the fact that a majority of this court, by concurring in an opinion adjudicating this cause upon the merits, have of necessity held by direct implication that this court has jurisdiction, it is with a considerable degree of hesitation and reluctancy that I now advance my own view to the effect that this court is entirely lacking in jurisdiction of original proceedings in the nature of quo warranto. This reluctance is augmented by three circumstances: First, that the question of the existence of jurisdiction is not directly raised by the parties to this proceeding: second, that this court has heretofore assumed to exercise such jurisdiction upon divers occasions; and, third, that within the past year I myself concurred in an opinion in a case where this court assumed to exercise such jurisdiction. Gibbs v. Bergh, 51 S. D. 432, 214 N. W. 838. However, so able and eminent a jurist as Judge Cardozo said a few years ago:

"A brief experience on the bench was enough to reveal to me all sorts of cracks and crevices and loopholes in my own opinions, when picked up a few months after delivery and re-read with due contrition."

Approaching the Gibbs-Bergh Case "with due contrition," I still adhere to the views therein expressed upon all the matters of law dealt with in that opinion, and I still adhere to the view there expressed that, assuming this court had jurisdiction over original proceedings in the nature of quo warranto, the facts in that case were such that this court should in its discretion have exercised such jurisdiction; but as to the fundamental fact assumed, though not specifically stated, in the Gibbs-Bergh Case, namely, that such jurisdiction existed and could be exercised in the discretion of this court, it is my present opinion that the court erred in so assuming and that such jurisdiction does not exist.

Somewhat by way of extenuation, although admittedly not as justification, it may be pointed out that upon the original hearing in the Gibbs-Bergh Case the defendant, although suggesting, as I

recall it, upon the oral argument, some possible question as to existence of jurisdiction, really tacitly assumed such jurisdiction, and chiefly urged the proposition that the facts involved in that case were not such as would justify this court in that particular case, as a matter of discretion, in assuming to exercise such jurisdiction. Defendant opened his brief in that case in the following language:

"As we view the proposition the first thing to be considered is whether or not this court desires to assume the original jurisdiction of this proceeding."

And he cited such cases as Everitt v. Board of Commissioners, 1 S. D. 365, 47 N. W. 296; Oss v. Depositors' Guaranty Fund Commission, 48 S. D. 258, 204 N. W. 21, and Parsons v. Smith, 48 S. D. 445, 205 N. W. 36.

Perhaps because the argument of defendant did not stress the question of existence of jurisdiction, but devoted itself in that regard principally to the question of the discretion of this court, and by reason of the fact that a number of precedents for exercising such jurisdiction existed, this court in that case did not devote to the question of existence of jurisdiction the time and attention which it properly deserved, but rather casually assumed the existence thereof, and devoted itself in the opinion to adjudicating (and, in my judgment, correctly adjudicating) the question of whether the circumstances of the case justified this court in exercising in its discretion a jurisdiction assumed to be existent, and in adjudicating the questions of substantive law in controversy between the parties. After the filing and publication of the opinion in the Gibbs-Bergh Case, however, defendant therein filed an application for rehearing, at which time the question of existence of jurisdiction in this court was thoroughly and ably presented and vigorously urged, and as result of consideration of that application for rehearing, and some study and investigation pursuant thereto, I then became convinced that this court has no jurisdiction to entertain original proceedings in the nature of quo warranto, which opinion I still entertain.

It is elementary that original jurisdiction of this court in proceedings of this nature, if any, must be bottomed upon the Constitution of this state. It cannot arise by consent of parties, nor by desire of parties to have such jurisdiction exercised, nor by the failure of parties to question the existence thereof. Neither can it

be acquired by prescription, nor by enjoyment and user by this court over a period of years.

Before turning to a consideration of the Constitution and statutes of this state, it may perhaps be of value to consider briefly somewhat of the origin, nature, and history of the various processes and proceedings relating to quo warranto. Tracing the history of the matter, we find that it runs about as follows:

The first remedy of this sort known to the common law was strictly and properly speaking the writ of quo warranto. The precise date of its origin seems to have been lost in antiquity, but it arose at a very early date. It was a high prerogative writ of right, issued only at the instance of the crown and by the crown officer for neglect, misuser, or abuse of a franchise or liberty, whereby the king esteemed his rights to suffer or his prerogative to be infringed. The writ was returnable only to the Court of King's Bench at Westminster. This made an expensive proceeding and by statute 6 Edward I, c. 1 (1278), 18 Edward I (1290), writs of quo warranto were made returnable before the itinerant justices in eyre. Lord Coke explains these statutes by saying:

"The costs, charges and expenses of the subjects in these cases [that is, quo warranto returnable to the Court of King's Bench] were excessive, and therefore to meet with this, mischief, and that the subject might receive justice in his own country, as it were at his own home, it is likewise of the king's special grace that pleas of quo warranto should be heard and determined in the eyres of the justices." 2 Co. Inst. 497.

These statutes in substance removed jurisdiction of the writ of quo warranto from the Court of King's Bench to the eyres, but the writ still remained a prerogative writ, lying only at the instance of the crown and civil in its nature. The matter so continued until after the creation of the Courts of Assizes in 1285, when the eyre courts, being substantially replaced by the assizes, were gradually discontinued, and by 1340 had practically ceased. The assize courts had no jurisdiction in the nature of quo warranto, and such jurisdiction therefore naturally reverted to the Court of King's Bench, whence it had been transferred by the statutes of 1278 and 1290 to the now discontinued eyre courts. In the meantime, however, proceedings by information had been developing in use. The writ of quo warranto was a lengthy and expensive process, and

judgment therein absolutely final, even against the crown, and when the Court of King's Bench again took over jurisdiction in quo warranto, after the cessation of the eyre courts, it did not do so by again taking over the old form of writ of quo warranto, but assumed such jurisdiction by the issuance of information in the nature of quo warranto, and thus that procedure for the first time came into the law.

"The informations of quo warranto are a late institution, which came in upon a cessation of eyres, which happened 12 Edward III, and they are formed to answer the design and end of proceedings in eyre; before that quo warrantos were either determined before justices in eyre or at Westminster by original writ of quo warranto." Regina v. Blagdon (1714) Gilb. Cas. 145 (93 Eng. Rep. Reprint, 288).

"Informations in the nature of a quo warranto are of late institution. They are said to have come in on the cessation of eyres, the end and design of which were formed to answer. * * * Quo warrantos having been originally returnable only in the Court of King's Bench, that court upon the discontinuance of eyres revived its jurisdiction in the present shape. For being custos morum of the nation, and a usurpation being a crime, it grafted the inquiry of quo warranto upon this its criminal jurisdiction. And yet the old writ of quo warranto was a civil writ at the suit of the crown, and not a criminal prosecution." Bac. Abridg. (7th Ed.) IV, 406.

Thus we find the proceeding, having changed its form from civil to criminal, but remaining in substance the same, being used to try the same civil issues as the old writ, and the fine being nominal only. The information issued only at the instance of the crown, and the proceeding still continued prerogative in its nature. The old cases present much interesting discussion as to various technical distinctions between the old writ of quo warranto and this new proceeding by information in the nature of quo warranto, as to process, form of judgment, etc. See Sir Edmund Bacon's Case (1625) Latch, 46 (82 Eng. Rep. Reprint, 267); Rex. v. Stanton (1610) Cro. Jac. 259 (79 Eng. Rep. Reprint, 223); Rex v. Trinity House (1652) 1 Sid. 86 (82 Eng. Rep. Reprint, 986); Rex v. Mayor Hartford (1699) 1 Salk. 374 (91 Eng. Rep. Reprint, 325); Rex v. Williams (1757) 1 Bl. W. Rep. 93 (96 Eng. Rep. Reprint, 51); Reg. v. Blagdon (1714) Gilb. Cas. 145 (93

Eng. Rep. Reprint, 288) ; Rex v. Marsden (1765) 1 Bl. W. Rep. 579 (96 Eng. Rep. Reprint, 335) ; Rex v. Amery (1788) 2 Term Rep. (D. & E.) 515 (100 Eng. Rep. Reprint, 278).

But, regardless of any technical distinctions in practice or procedure, the purpose and object of the proceeding by information was exactly the same as that of the old writ, which it thenceforth entirely superseded. It continued to be an entirely prerogative proceeding, available only at the instance of the crown, until 1711, when by statute (9 Anne, c. 20) it was first provided that such information might issue at the instance and upon the relation of a subject as distinguished from the crown. This statute provided in part as follows:

"That in case any person or persons shall usurp, intrude into, or unlawfully hold and execute the offices of mayors, bailiffs, portreeves, or other offices within cities, towns corporate, boroughs, or places in England or Wales, or into the franchises of being burgesses or freemen of such cities, towns corporate, boroughs or places, it shall and may be lawful to and for the proper officer of the Court of Queen's Bench, the Courts of Sessions of Counties Palatine, or the Court of Grand Sessions in Wales, with the leave of the said courts respectively, to exhibit one or more information or informations in the nature of a quo warranto, at the relation of any person or persons desiring to sue or prosecute the same, and who shall be mentioned in such information or informations to be the relator or relators against such person or persons so usurping, intruding into, or unlawfully holding and executing any of the said offices or franchises, and to proceed therein in such manner as is usual in cases of informations in the nature of a quo warranto."

From this time forward the scope of the proceeding by information has been enlarged to reach other matters, and in many jurisdictions the incongruity of pursuing a remedy, criminal in its form, to accomplish an object entirely civil in its nature, has been avoided by creating by statute a third type of proceeding, namely, a civil action designed to accomplish the identical thing first accomplished by the old civil writ of quo warranto, and later accomplished by the criminal information in the nature of quo warranto. It is thus apparent that the old writ, civil in form, was entirely superseded by the information, criminal in form, and that in many places a return to a proceeding, civil in form, is made by statute,

not by restoring the old original civil writ, but by providing for a proper civil action.

With these matters in mind, let us examine the Constitution and statutes of this state. The pertinent provisions of the Constitution are sections 2 and 3 of article 5, which read as follows:

"Sec. 2.- The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law.

"Sec. 3. The Supreme Court and the judges thereof shall have power to issue writs of habeas corpus. The Supreme Court shall also have power to issue writs of mandamus, quo warranto, certiorari, injunction and other original and remedial writs, with authority to hear and determine the same in such cases and under such regulations as may be prescribed by law: Provided, however, that no jury trials shall be allowed in said Supreme Court, but in proper cases questions of fact may be sent by said court to a circuit court for trial before a jury."

From an examination of section 3 it will be seen that the power of the Supreme Court to issue writs of habeas corpus is absolute and without restriction, and that sentence of said article is manifestly self-executing. It is equally apparent, however, that the power of the Supreme Court to issue writs of mandamus, quo warranto, certiorari, injunction, and other original and remedial writs is limited to "such cases and under such regulations as may be prescribed by law." It seems to me quite plain that this second sentence of the third article is not self-executing, and that, particularly in view of the provisions of section 2, this court, after the adoption of the Constitution of this state, has no jurisdiction to issue any of the writs mentioned in the second sentence of section 3, unless and until the Legislature prescribes the cases in which and regulations under which the same may issue.

Turning now to the statutes, we have no statutory provision for writ of quo warranto, nor for information in the nature of quo warranto, in this or any other court, but our only statutory provision is found in sections 2781-2797, Revised Code 1919, as amended by chapter 289, Laws 1919, which relate to civil actions for the purpose of securing the remedies formerly obtainable by

"the writ of quo warranto, and proceedings by information in the nature of quo warranto." As indicated above, writs of quo warranto, informations in the nature of quo warranto, and civil actions for obtaining the same remedies are three separate, distinct, and different procedures, granting the fact that they all look toward the accomplishment of the same end. The Constitution authorizes the Legislature to prescribe the cases in which, and regulations whereby, this court may issue writs of quo warranto. It may very well be questioned whether, under such constitutional authority, the Legislature could by any possibility vest in this court in any case original jurisdiction, not to issue a writ of quo warranto, but to hear and try a civil action of the type prescribed in sections 2781-2797, Revised Code 1919. It has been expressly held by this court, and I think rightly, that the civil action provided for by our statute is not a substitute for the writ of quo warranto, or for the information in the nature of quo warranto, but is a cumulative remedy. Wright v. Lee, 4 S. D. 237, 55 N. W. 931, construing section 5345, Compiled Laws Dakota 1887 (substantially the same as section 2781, Revised Code 1919). The holding of Kellam, J., in that case, to the effect that section 5345, Compiled Laws 1887, did not abolish writs of quo warranto, or informations in the nature of quo warranto, and was not by its terms intended so to do, is strengthened by the history of the section in question. It first came into our law as section 347, Code of Civil Procedure 1867-68, and read as follows:

"*Scire facias and quo warranto abolished, and* this *chapter substituted.* The writ of *scire facias,* the writ of *quo warranto,* and proceedings by information in the nature of *quo warranto* are abolished; and the remedies heretofore obtainable in those forms may be obtained by civil actions under the provisions of this chapter. But any proceeding heretofore commenced, or judgment rendered, or right acquired, shall not be affected by such abolition."

But by the time of the adoption of the Revised Code of Dakota in 1877 the territorial Legislature appears to have realized the impossibility of taking away jurisdiction from courts that were really federal courts, deriving their authority from the Organic Act, and the Code revisers changed this section, striking out the portion thereof purporting to abolish writs of quo warranto, and proceedings by information in the nature of quo warranto, and

the section was revised and re-enacted as section 531, Revised Code 1877, reading as follows: ·

"The remedies formerly attainable by the writ of scire facias, the writ of quo warranto, and proceedings by information in the nature of quo warranto, may be obtained by civil actions under the provisions of this chapter."

In that form this statute has since continued to be a part of our law, except that there were added thereto by Chapter 289, Laws 1919, the following words:

"When the action is prosecuted by the state's attorney, the state of South Dakota shall be plaintiff; when it is prosecuted by a private person, such person shall be the plaintiff therein and the proceedings in such action shall be the same as in an action by a private person except as otherwise specially provided." Section 1.

It is unnecessary, however, at this time, to go into the question of the power of the Legislature to give this court original jurisdiction of the civil actions provided for by sections 2781-2797 of the Code as amended. It is entirely sufficient to say that an examination of those sections entirely fails to show that the Legislature has undertaken or intended to confer original jurisdiction of such actions upon this court. The provisions of those sections relate entirely to the circuit courts. And it is equally manifest that nowhere in the statutes of this state has the Legislature undertaken to prescribe any cases in which, or regulations under which, this court may issue a writ of quo warranto, or entertain original jurisdiction of an information in the nature of quo warranto.

I turn now to the cases prior to Gibbs v. Bergh, supra, in which this court appears to have entertained jurisdiction of this character. For these citations I am indebted to the kindness and industry of the late Judge John Howard Gates, who at the time of the application for rehearing in the Gibbs-Bergh Case made a page by page examination of the South Dakota Reports to determine the cases in which this court had so entertained original jurisdiction. As a result of that search he furnished to the members of the court the following list of cases, which I believe to be complete:

The first case was State ex rel McGee v. Gardner (1893), 3 S. D. 553, 54 N. W. 606. The opinion in this case is by Kellam,·

J., and contains little or no discussion as to jurisdiction, but the court contents itself by saying (page 556, state report [54 N. W. 607]):

"The jurisdiction of this court in quo warranto proceedings is derived from section 3, art. 5 of the Constitution."

There is found in the opinion no discussion of that clause of section 3, article 5, which reads, "in such cases and under such regulations as may be prescribed by law." It is interesting to note that this opinion says:

"This constitutional provision, while using the terms 'writ of quo warranto,' has in different states been construed to mean the modern information in the nature of such writ. State v. Railroad Co., 34 Wis. 197; State v. Gleason, 12 Fla. 190; People v. Utica Ins. Co., 15 Johns [N. Y.] 358 [8 Am. Dec. 243]; State v. Leatherman, 38 Ark. 81; People v. Keeling, 4 Colo. 129."

And in that connection it is also worthy of notice that this opinion was filed February 24, 1893, and is by the same judge who wrote the opinion filed October 18, 1893, in the case of Wright v. Lee, supra, wherein he clearly pointed out the distinction between the writ of quo warranto, the information in the nature of quo warranto, and the civil action for obtaining the same remedies as hereinbefore mentioned, and expressly held that the civil action provided by our statute did not abolish the writ of quo warranto, or the information in the nature of quo warranto, but was a cumulative· remedy.

The next case was State ex rel Holmes v. Finnerud (1895), 7 S. D. 237, 64 N. W. 121. The question of jurisdiction is disposed of by the following language (page 238, state report [64 N. W. 121]):

"No question is raised as to the exercise of the original jurisdiction of this court in this case, and its power to exercise such original jurisdiction in this class of cases is fully discussed in State ex rel Dollard v. Board of Commissioners of Hughes Co., 1 S. D. 292, 46 N. W. 1127 [10 L. R. A. 588], Everett v. Board of Commissioners of Hughes Co., 1 S. D. 365, 47 N. W. 296, and State v. Gardner, 3 S. D. 553, 54 N. W. 606."·

As shown above, the case of State ex rel McGee v. Gardner, here referred to, contains practically no discussion of the question of jurisdiction. Neither the Dollard Case (1 S. D. 292, 46 N. W.

1127, 10 L. R. A. 588) nor the Everett Case are in point, for the reason that both of those cases were certiorari, and there was specific legislative provision for certiorari in the Supreme Court by virtue of section 5507, Compiled Laws 1887, which has come forward unchanged as section 2996, Revised Code 1919. So that the question involved upon quo warranto, namely, the failure of the Legislature to provide the cases in which, and the regulations under which, the writ might issue, could not possibly arise in certiorari. In any event, neither the Dollard nor Everett Case turns upon the question of existence of jurisdiction, but rather upon the question of when in the court's discretion admittedly existent jurisdiction should be exercised. It is also worth noting that the provision of the Wisconsin Constitution, which the court in the Dollard Case (page 297, state report [46 N. W. 1129]) says "is substantially the same as the provisions of our Constitution, defining the powers and jurisdiction of the Supreme Court," is in fact very materially different from our Constitution, in that it is absolue in form and entirely omits any provision in any wise corresponding to our "in such cases and under such regulations as may be prescribed by law." The provision in Wisconsin is the last part of section 3, article 7, Constitution 1848, and read as follows:

"The Supreme Court shall have a general superintending control over all inferior courts; it shall have power to issue writs of habeas corpus, mandamus, injunction, quo warranto, certiorari, and other original and remedial writs, and to hear and determine the same."

The next case was State ex rel Holmes v. Shannon (1895), 7 S. D. 319, 64 N. W. 175. This case contains no discussion of the question of jurisdiction.

The next case was State ex rel Wood v. Sheldon (1896), 8 S. D. 525, 67 N. W. 613. This case likewise fails to discuss the question of jurisdiction, but the court contents itself with the following recital (page 526, state report [67 N. W. 613]):

"This is an original information in the nature of quo warranto, brought in this court under the provisions of section 5348, Comp. Laws."

In this case, upon the complaint in the original action and affidavits filed therewith, a show cause order for an injunction was issued, and the real matter before the court in this opinion was upon the issuance of the injunction.

512

The next case was State ex rel Wood v. Smedley (1896), 8 S. D. 531, 67 N. W. 1151. This was a companion case to State ex rel Wood v. Sheldon, supra, and was decided upon the authority thereof by a memorandum opinion, with no discussion.

The next case was State ex rel Adams v. Herreid (1897), 10 S. D. 16, 71 N. W. 319. Here also the matter before the court was the question of whether an injunction should issue in the course of the original action to determine title to office, and the opinion contains no discussion of the court's jurisdiction of the original action, but such jurisdiction seems to have been assumed without argument.

The same case a little later was before the court on the merits (same title, 10 S. D. 109, 72 N. W. 93), and was then finally disposed of, without any discussion whatever of the question of jurisdiction.

The next case was State ex rel Lavin v. Bacon (1901), 14 S. D. 284, 85 N. W. 225. This case contains no discussion of the question of jurisdiction.

The next case was State ex rel Lavin v. Bacon (1901), 14 S. D. 394, 85 N. W. 605. This was another proceeding between the same parties as the case last above, after an intervening legislative act (chapter 65, Laws 1901). This case also assumes the existence of jurisdiction without any discussion.

Here there seems to have been a lapse of some 19 years in the exercise of this type of jurisdiction by this court; the next case being State ex rel Payne v. Anderson (1920), 42 S. D. 601, 176 N. W. 741. This was followed in the same year by two other cases, Nelson v. Lembcke, 43 S. D. 207, 178 N. W. 981, and Gunderson v. Elgaaen, 43 S. D. 215, 178 N. W. 984, but in none of these three cases is there any discussion as to the question of jurisdiction.

It does not appear from any of these decisions that the question of the existence of this sort of jurisdiction in this court has ever been carefully considered by the court, nor does it appear from any of these opinions that this court has ever given attention to the proposition that by virtue of the Constitution the power of this court to issue writs of quo warranto is limited to "such cases and under such regulations as may be prescribed by law," and that no such cases or regulations have been prescribed with

reference to quo warranto in any manner whatever, though they have been prescribed with reference to mandamus, certiorari, etc.

Being of the opinion that this court can have no jurisdiction of the present proceeding, it follows that I find myself unable to concur in the very able opinion of BROWN, J., which assumes the existence thereof. I therefore respectfully dissent, solely on the jurisdictional ground.